

**FILED**

AUG 2 1 2020

JUDGE JOHN Z. LEE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

BRANDON PITTS

No. 18 CR 743

Judge John Z. Lee

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant BRANDON PITTS, and his attorney, DENNIS A. GIOVANNINI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The superseding indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1-2 and 4-7); and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1) (Count 11).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count 1, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count 11, which charges defendant with aggravated identity theft, in violation of Title 18, United States Code Section, 1028A(a)(1).

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 and 11 of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning no later than in or about November 2013, and continuing until in or about December 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant, together with Corey Logsdon, Korey Isbell, Yoshmi Henry, Kewan Watts, Ashley Weathersby and Angelo Steele, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property, in the form of unemployment insurance benefit funds from the State of Illinois, by means of materially false and fraudulent pretenses, representations, and promises, and in furtherance thereof used interstate wires, in violation of Title 18, United States Code, Section 1343.

2

In addition, no later than August 11, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant and Ashley Weathersby, did knowingly transfer, possess, and use without lawful authority a means of identification of another person, namely, the name, date of birth, and social security number of Victim L.L., during and in relation to the wire fraud offense described in Count 1 of the Superseding Indictment, knowing that the means of identification belonged to another person, in violation of Title 18, United States Code, Section 1028A(a)(1).

Specifically, beginning at least in December 2013, defendant knew that co-schemer Ashley Weathersby held a position at Health Care Provider A that allowed her to access the personal identification information, such as names, dates of birth, social security numbers and driver's license numbers, of Health Care Provider A patients (the "personal identification information"). At about that time, defendant knew that co-schemer Corey Logsdon was paying cash to Weathersby in exchange for personal identification information for Health Care Provider A patients, and that Weathersby was providing that information to Logsdon without the authorization or permission of the patients. Defendant himself began paying Weathersby in cash and gifts in or about July 2014 for personal identification information of Health Care Provider A patients, and knew that Weathersby was providing him that information without authorization or permission of the patients. Defendant also knew that, in

3

addition to Logsdon, co-schemer Angelo Steele also received the personal identification information of Health Care Provider A patients from Weathersby.

Defendant knew that unemployed individuals in Illinois, who were terminated without fault, could file a claim over the Internet with the Illinois Department of Employment Security ("IDES") and receive unemployment benefits during the period of time in which they were unemployed, were able to work, and had been actively seeking work. Defendant further knew that claimants could choose to have their unemployment benefits loaded onto a debit card or directly deposited to a bank account. Defendant further knew that, in order to receive benefits from IDES for each weekly or biweekly period of unemployment, claimants had to certify certain eligibility information, for example, whether the claimant worked, was able and available to work, and actively sought work during the certification period. Defendant knew that these certifications could be made by phone or over the Internet, and that certification had to be made before benefits could be paid via the method of payment selected by the claimant.

Defendant used the personal identification from Weathersby to file fraudulent claims for unemployment insurance benefits with the IDES in the names of Health Care Provider A patients. In those fraudulent claims, defendant selected the debit card method of payment, and directed that the debit cards be mailed to addresses which defendant knew did not belong to Health Care Provider A patients but were instead addresses that defendant and his co-schemers controlled.

4

Defendant acknowledges the government's position that he used the names and personal identification information of at least 171 individuals, without authorization, to file at least 645 fraudulent IDES applications claiming unemployment benefits. Defendant acknowledges that in total, he and co-schemers Logsdon and Steele used the names and personal identification information of at least 892 individuals, without authorization, to file at least 892 fraudulent IDES applications claiming unemployment benefits to which they were not entitled.

As a result of the fraudulent claims made by defendant, Logsdon and Steele in the applications they submitted using the personal identifying information of Health Care Provider A patients, IDES funded accounts in the names of Health Care Provider A patients and directed Chase Bank to mail IDES debit cards to addresses that defendant and his co-schemers provided on the fraudulent applications. These addresses were controlled by defendant and his co-schemers. Defendant acknowledges the government's position that at least 53 of those addresses defendant used on the fraudulent applications were provided to defendant by co-schemer Kewan Watts, and defendant paid Watts for that information.

Defendant also used the IDES website to fraudulently complete and cause to be completed the IDES certification process in the names of purported IDES claimants, including by falsely representing to IDES that the claimants were entitled to benefits, had been available and able to work, and actively sought work during the certification period. Defendant knew that once he or his co-schemers fraudulently

certified eligibility for the purported claimants, the debit cards would be funded by IDES. Defendant further knew that, once a debit card was issued to a claimant, the debit card would be regularly funded by IDES so long as the claimant continued to certify eligibility and IDES determined the claimant was eligible.

After Chase Bank mailed the debit cards, defendant himself retrieved, and directed Isbell, Watts, and others working at his direction, to retrieve, the mailed debit card from the addresses defendant and his co-schemers provided to IDES. Defendant used the fraudulently obtained debit cards to withdraw unemployment insurance benefits from automated teller machines ("ATMs"), knowing that he was not entitled to those funds. Defendant used the funds for his own purpose and benefit.

More specifically, as charged in Count One of the superseding indictment, at some point prior to August 11, 2015, defendant paid Weathersby for the name, social security number, and driver's license number of Victim L.L. and filled out an online application for IDES benefits using that information. Defendant knew at the time that Victim L.L. was a real person, and that defendant was not authorized to apply for unemployment insurance benefits in the name of Victim L.L., or use or possess the name, social security number, and driver's license number of Victim L.L.

Based on the claim for IDES benefits made by defendant in Victim L.L., Chase sent by U.S. mail a Chase prepaid debit card associated with an account ending in 2455 in the name of Victim L.L. to the address provided by defendant in his fraudulent online application. Defendant or one of his co-schemers retrieved the card

mailed to that address, and on or about August 11, 2015, defendant used the IDES debit card in the name of Victim L.L. to withdraw $800 from a Chase ATM located in Chicago, Illinois. Defendant admits that that withdrawal caused a wire communication in interstate commerce, namely, an electronic withdrawal request message routed through the Chase data center located in Wilmington, Delaware.

The government's position is that during the scheme, defendant and his co-schemers filed false and fraudulent unemployment insurance claims in the names of, and using the personal identification information of, at least 892 individuals, resulting in intended loss to IDES of approximately $8.8 million in unemployment benefits and actual loss to IDES totaling approximately $1.5 million in unemployment benefits. Defendant's position is that the actual loss to IDES totals between $500,000 to $1,500,000.

### Maximum Statutory Penalties

7.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

      a.      Count 1 carries a maximum sentence of 20 years' imprisonment. Count 1 also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count 1 the judge also may impose a term of supervised release of not more than three years.

b.     Count 11 carries a sentence of 2 years' imprisonment. The sentence of imprisonment on Count 11 is required to be consecutive to any other sentence imposed. Count 11 also carries a maximum fine of $250,000. Defendant further understands that with respect to Count 11, the judge also may impose a term of supervised release of not more than one year.

c.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

d.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e.     Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 22 years' imprisonment, and the minimum sentence is two years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

8

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

**b.**     **Offense Level Calculations.**

**Count 1**

i.     The base offense level is seven, pursuant to Guideline § 2B1.1(a)(1).

ii.     The Government's position is that the offense level is increased by 18 levels, pursuant to Guideline § 2B1.1(b)(1)(J), because the intended loss reasonably foreseeable to the defendant is more than $3,500,000 and less than $9,500,000. Defendant's position is that the offense level is increased by 14 levels, pursuant to Guideline § 2B1.1(b)(1)(H), because the loss is more than $550,000 and less than $1,500,000.

iii.     The offense level is increased by two levels, pursuant to Guideline § 2B1.1(b)(2)(A), because the offense involved 10 or more victims. Defendant disagrees that this enhancement applies.

iv.     The Government's position is that the offense level is increased by two levels, pursuant to Guideline § 2B1.1((b)(10)(C), because the offense involved the use of sophisticated means, and defendant's conduct constituted sophisticated means. Defendant disagrees that this enhancement applies.

v.     The Government's position is that the offense level is increased by four levels, pursuant to Guideline § 3B1.1(b), because the defendant was an organizer or leader and the criminal activity involved five or more participants and was otherwise extensive. Defendant disagrees that this enhancement applies.

10

### Count 11

vi.     The Guideline sentence, pursuant to Guideline § 2B1.6, is the term of imprisonment required by statute, namely, two years, and that sentence shall not run concurrently with any other sentence, pursuant to Title 18, United States Code, Section 1028(A)(1) and (b).

vii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

viii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

11

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 29 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose on Count 1. Defendant's position is that the anticipated offense level is 18 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose on Count 1. Defendant acknowledges that he is subject to a sentence of two years' imprisonment on Count 11, pursuant to Title 18, United States Code, Section 1028(A), which must run consecutively to any term of imprisonment imposed on Count 1.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to

12

conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.　　Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to the victims of the offense in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14.　　Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.　　Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.　　Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

14

17.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the Indictment, and the forfeiture allegation as to defendant.

### Forfeiture

18.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

19.     Defendant agrees to the entry of a personal money judgment in an amount to be determined by the Court, which represents the total amount of proceeds traceable to the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

20.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

21.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the

15

Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 743.

24.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States

16

Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

25.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

## Waiver of Rights

26.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

17

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

18

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

> **b.** **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

27.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

28.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

29.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's

Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

30.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

31.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

providing financial statements and supporting records as requested by the United States Attorney's Office.

32.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

33.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

21

## Conclusion

34.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

22

37.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _7-17-20_

LINDSAY JENKINS
Digitally signed by LINDSAY JENKINS
Date: 2020.07.10 14:43:38 -05'00'

signed by Lindsay Jenkins for
JOHN R. LAUSCH, JR.
United States Attorney

MATTHEW KUTCHER
Digitally signed by MATTHEW KUTCHER
Date: 2020.07.16 13:59:11 -05'00'

MATTHEW L. KUTCHER
Assistant U.S. Attorney

BRANDON PITTS
Defendant

DENNIS A. GIOVANNINI
Attorney for Defendant