# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 18 CR 743 |
| V. | ) | |
| | ) | Judge John Z. Lee |
| BRANDON PITTS | ) | |

## DEFENDANT BRANDON PITTS OBJECTIONS TO PRE-SENTENCE REPORT AND SENTENCING RECOMMENDATION

Comes now the defendant, Brandon Pitts, by and through his attorneys, Giovannini & Fenner, and submits the following memorandum:

The defendant, Brandon Pitts, has entered pleas of guilty to the following Counts of the instant indictment:

Count 1, which charges the defendant with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. 1341 & 1343.

Count 11, which charges the defendant with Aggravated Identity Theft in violation of 18 U.S.C. 1028A(a)(1).

As is set forth in the plea agreement previously filed with this Court, while the Government and the defendant are in general agreement as to the underlying facts supporting the indictment, they disagree on several issues pertaining to the Sentencing Guidelines to be applied.

## *GUIDELINES FOR COUNT I*

The defense agrees with the Pre-Sentence Investigation on the following issues as they pertain to the defendant's offense level for Count I of the indictment.

1. There is no information indicating that the defendant obstructed or impeded justice.
2. Both parties agree that the defendant has clearly shown Acceptance of Responsibility and should be given a 2 point reduction as is applies to Count I of the indictment.
3. Both Parties agree that the defendant is entitled to an additional 1 level reduction for his timely plea.
4. That a 2 level enhancement under USSG 2B1.1(b)(2)(A) is inapplicable in light of the wording of application Note 2 of USSG 2B1.6.
5. That a 2 level enhancement for the use of sophisticated means under USSG 2B1.1(b)(10)(C) should not apply.
6. That a 3 level increase is applicable based upon the defendant's managerial position over at least one other co-defendant.

Both parties agree that the base offense level on Count 1 is seven pursuant to Guideline 2B1.1(a)(a)1.

1. The first area of disagreement deals with the amount of loss caused or intended by the defendant. It is the Government's position that there was intended loss to IDES of more that $8,800,000, while it is contended by the defendant that the total amount of loss, either actual or intended is slightly over $1,500,000.

If the government's contention is upheld it would result in an increase of 18 levels pursuant to USSG 2B1.1(b)(I)(J).  Under the defendant's version there would be an increase of 16 levels pursuant to USSG 2B1.1(b)(1)(H).

Application Note 3 under guideline 2B1.1 defines intended loss as follows:

(ii) Intended Loss, - "Intended Loss" (I) means the pecuniary harm that the defendant **purposely sought to inflict**; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation , or an insurance fraud in which the claim exceeded the insured value). (Emphasis added.)

Based upon the information provided by the Government, and giving their loss calculation the benefit of the doubt, it seems clear that the total actual loss that is in any way connected to Brandon Pitts is at most $800,000.  This is based upon a chart tendered by the government to the defense which sets forth actual losses suffered by IDES from any item or transaction that the Government contends was in any way associated with Brandon Pitts.  The defenses position is that many of these transactions had nothing to do with the defendant, and that the amount actually received by the defendant is in the area of $500,000.

It appears to be the Governments position that any account associated directly or indirectly with the defendant, or with any location frequented by him at any time, could possibly have been the subject of additional losses had the defendant saw fit to exploit them.  The government then took the maximum allowable amount of unemployment benefits, even when there was no loss or attempted loss, and attributed them to the defendant.  There is no evidence of such intent, and no basis for assuming that that was the case.  This alleged conspiracy in this cause allegedly ran through December, 2015.  The defendant was not indicted

3

until more than two years after the ending of the conspiracy.  There are no activities of the defendant during this period which support the Government's position that he intended to further defraud IDES.  To assume that just because there could have been more fraud committed on these particular accounts during the period of the conspiracy is simply an attempt to punish the defendant for a crime that he could have committed but chose not to.

It also appears that the Government's position is not only that the defendant intended to commit further fraud, but that he intended to use all of the identities until the maximum amount of benefits were received.  This is clearly not the case in light of the fact that the government's own chart shows that only a fraction of the benefits available from some of these accounts was actually applied for and received by the defendant.  In fact the governments chart shows that in the vast majority of these cases no claims were ever filed.

A brief discussion of the basis of the government's position is appropriate.  First the government points to the fact that in May of 2014 a search warrant was executed at a house in Los Angeles that was occupied by both the defendant and co-defendant, Corey Logsdon.   During that raid there were numerous cellular telephones and, most importantly, three computers which contained a large number of names of Southwest Gastro patients, presumably purchased from co-defendant Weathersby.  What the government fails to mention is that the computers were not found in the defendant's room, and he has no knowledge of what was contained on them.  The government's own proffer indicated that the defendant did not begin purchasing Southwest Gastro information from Weathersby until July of 2014.  The

4

vast majority of the items recovered in this raid were recovered from defendant Logsdon's bedroom. The government, however, attributed all of these items to the defendant . According to the government's submission a total of 9 pieces of identity were found in the defendant's bedroom. The government now wants to attribute everything in the apartment to the defendant.

Similarly, in December 0f 2015 when agents raided an apartment in Chicago where they said the defendant had frequented they recovered information of more than 500 additional Southwest Gastro patients. What the government fails to point out that that apartment was rented to defendant Logsdon. Nonetheless, the government attributes all of these cases to the defendant.

It seems clear that the government's position is that any account associated with either of these addresses should be attributed to the defendant for the maximum amount that could possible have been taken whether they were used or not. This is simply not fair.

The defense's position is that this case should be treated in a similar manner as those other types of cases dealing with fraud. For example: In <u>United States v. Strozier</u>, 981 F.2d 281 (7th Cir. 1992), which involved a check kiting scheme, the Court determined that the intended loss would include the total amount of fraudulent checks **actually deposited** regardless of whether the defendant received funds for them. The rational is that the defendant had completed virtually all of the acts necessary in order to facilitate the fraud. This was in spite of the fact that he had possession of additional checks that were never used. Similarly in <u>United States v. Vivit</u>, 214 F.3d 908 (7th Cir. 2000), where a doctor had submitted overcharges for

insurance reimbursement for various medical procedures the Court determined that the correct amount to be considered was the total amount of **actual bills submitted**. This in spite of the fact that the doctor was in possession of insurance information on hundreds of patients. See also <u>United States v. Valdez</u>, 5th Circuit Court of Appeals No. 12-50027 decided August 12, 2013.

The intended loss that should be attributable to Mr. Pitts is a fraction of what the government has alleged. The total amount of intended loss should be based upon the approximately 171 identities that the defendant admitted to in his plea agreement. He should not be held to account for the actions of his co-defendants Logsdon or Steele, both of who were purchasing identity information from Weathersby.

Based upon the government's own calculations, had the 892 identities that were allegedly compromised been used to withdraw the maximum amount of benefits possible, the total loss is 8.8 million dollars or approximately $9,865 per identity. Taking the identities that are actually associated with Mr. Pitts, that being around 171, and multiplying that number we get a potential loss of approximately 1.7 million. That is the most that should be attributable to Mr. Pitts for guideline purposes. Given that the defendant increase should be 16 rather than 18 giving him a basic point total of 23 plus 3 points for his managerial position thereby resulting in an offense level of 26.

2. Regardless of what amount this Court deems attributable to Mr. Pitts he should clearly be entitled to a three level reduction based upon USSG 2x1.1(b)(2) Guideline 2X1.1(b)(2), which governs conspiracy cases reads as follows:

> "(2) If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control."

Application note 4 under this guideline gives the following example of when this 3 level reduction should apply,

> "For example, where the intended offense was for the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the offense level for the theft of $800,000 minus 3 levels or the offense level for the theft of $30,000 whichever is greater."

A perfect example of the application of this Guideline can be found in United States v. John, 597 F.3d 263 (5th Cir. 2010). See also United States v. Maggi, 44 F.3d 478 (7th Cir. 1995) for a similar result. The case at bar is on all fours with these decisions and with the example given in the guidelines. For this reason if the Court is going to take into account potential losses in accounts that were never activated, and where the only action taken on those accounts was the obtaining of the basic information, a three level reduction is warranted as to Count I resulting in an offense level of 23.

3. The second objection to the pre-sentence report deals with a 2 point increase because the offense involved the possession of five or more means of identification that were unlawfully obtained by the use of another means of identification as set forth in USSG 2B1.1(b)(11)(C)(ii) and Application Note C.

It is the defense's position that due to the fact that he has also pled guilty to the offense of Aggravated Identity Theft, and as a result thereof is required to

7

receive a consecutive term of two years incarceration on that charge in addition to his sentence on Count I, that based upon the application notes pertaining to Aggravated Identity Theft, USSG 2B1.6, Application Note 2, this enhancement should not apply.

Guideline 2B1.6, application note 2, reads as follows:

2. <u>Inapplicability of Chapter two Enhancement</u>, - If a sentence under this Guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. 1028(d)(7).

In light of this Application Note the enhancement under Guideline 2B1.1(b)(11)(C)(ii) clearly should not apply in determining the offense level for Count I. Clearly the use of five or more means of identification under 2B1.1(b)(11)(C)(ii) is an offense characteristic encompassed by Guideline 2B1.6, Application Note 2. See <u>United States v. Doss</u>, 741 F.3d 763 (7th Cir. 2013) and <u>United States v. Xiao Yong Zheng</u>. 762 F.3d 605 (7th Cir. 2014) for two analogous situations where 2 level increases under USSG 2B1.1(b)(11) and 2L2.1(b)(5)(B) were held to be erroneous.

4. The defendant does not challenge a 3 level increase in his guideline based upon him being a manager of at least one other co-defendant. That being said the defendant's offense level for Count I should be as follows: A basic offense level of 7, an increase of 16 based upon intended loss, a 3 level increase for being a manager totaling 26. From this he is entitled to a 3 level reduction under Guideline

2X1.1(b)(2), a 2 point reduction for acceptance of responsibility, and a one point reduction for his timely plea. This gives the defendant a final total of 20 for Count I of the indictment.

## *DEFENDANT'S CRIMINAL HISTORY*

The next objection to the pre-sentence report deals with the defendant's criminal history. The pre-sentence report indicates that a two point increase is warranted under USSG 41.1(d) because the defendant committed the instant offense while under a criminal justice sentence.

As was noted in the pre-sentence report the defendant was on probation for the offense of Resisting Law Enforcement under Docket number 49F24-1306-FD-04279 arising out of the State of Indiana. The defendant's probation on that case, as noted, ended on January 31, 2014. While Count 1 of the superseding indictment alleges a conspiracy beginning "in or about November of 2013" the government has offered no proof that this defendant actually joined the conspiracy before February 1, 2014. The government's version of the offense previously submitted indicates that all of the activity specifically attributed to Mr. Pitts began at the earliest on or around May of 2014. In fact the government's version specifically states that the defendant began purchasing personal information from defendant Weathersby in July of 2014.

While other defendants may have committed the instant offense prior to January 31, 2013, the evidence suggests that the defendant did not become a part of the conspiracy until much later. As such the two point addition under USSG 41.1(d) should not apply.

As a result the defendant should have only 2 criminal history points putting his Criminal History Level at II rather than III.

In summary it is the defendant's position that his total offense level should be 20, and his Criminal History Level should be II, resulting in a Guideline Range of 37 to 46 months for Count I. Clearly his conviction on Count II must be 24 months to run consecutive with Count I.

### *MISCELLANEOUS OBJECTION*

As an aside there are two entries in the Presentence Report that need clarification. In paragraph 27 it indicates that, according to the FBI, two vehicles, a Mercedes Benz and a BMW were purchased using a fraudulent social security number. In fact both of those vehicles were purchased and financed under the defendant's true name and correct social security number. The BMW was purchased from Zeigler BMW and financed through that company. The Mercedes Benz was financed through TD Auto Finance. Both contracts were issues in the defendant's correct social security number.

In addition paragraph 29 indicates that at the time of the execution of a search warrant in Chicago that a "high end luxury vehicle" was located. That vehicle was a rental car from Enterprise Rent A Car while Mr. Pitts' other vehicle was being repaired after an accident.

Accordingly we would respectfully request that the Court not consider those items.

## **CONCLUSION**

I will not repeat all of the defendant's history and family relations in light of the fact that they are adequately set forth in the Presentence Report so well prepared by Ms. Jodi Halleran. I would, in mitigation, point out that a downward departure from the Guidelines should be warranted in light of several factors. First, the defendant has no fraud related offenses or crimes of violence in his background. His criminal history, with one exception, deals strictly with traffic related offenses. Second, this case is the first time that Mr. Pitts will be serving a substantial penitentiary sentence. Mr. Pitts has expressed his deep regret for his involvement in these offenses. He has, from day one, admitted his guilt and tried to run his life for the past five years in accordance with the law. Third, we would ask the Court to take into consideration the defendant's relationship with his young daughter which will obviously be disrupted for a lengthy period of time. In addition the defendant will be in no position to contribute to her support while he is incarcerated. Fourth, we would ask the Court to take into consideration the fact that the defendant was on electronic monitoring for approximately one year during the pendency of this case prior to pre-trial determining that this was no longer necessary.

In light of these factors we respectfully suggest that the goals set forth in 18 U.S.C. 3553(a) would be more than met by a sentence of 24 months imprisonment on Count I of the indictment, and the mandatory 24 months consecutive sentence on Count II.

Respectfully Submitted,

s/ Dennis A. Giovannini
Dennis A. Giovannini
Attorney for Brandon Pitts
216 S. Jefferson St., Suite 101
Chicago, IL 60661